O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**JAMES G. GARCIA,**

**Plaintiff,**

**v.**

**DAVID B. LONG, Warden, et al,**

**Defendants.**

**NO. EDCV 13-1610-JFW (MAN)**

**MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

On October 29, 2013, plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

Congress has mandated that courts perform an initial screening of civil rights actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The Court "shall" dismiss a prisoner civil rights action if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

In screening a *pro se* civil rights complaint, the Court must construe its allegations liberally

and must afford the plaintiff the benefit of any doubt. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). The standard applicable on screening is the standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* The complaint need not contain detailed factual allegations, but must contain sufficient factual matter to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). If a complaint is dismissed, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Karim-Panahi, 839 F.2d 621, 623 (9th Cir. 1988); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff's claims arose during his incarceration at Ironwood State Prison ("Ironwood"). (Complaint at 2.) Defendants are the following Ironwood officials: David Long, warden; S. Cheney, associate warden; S.M. Smith, captain; T.D. Wooldridge, lieutenant; F. Alvarez, lieutenant; A. Wright, sergeant; S. Patterson, correctional officer; E. Nunez, correctional officer; J. Rivera, correctional officer; L. Young, physician/nurse practitioner; A. Tolentino, physician; J.M. Lee, chief medical executive; Porras, correctional officer; and S. Lopez, correctional officer. (Complaint 1-4.)

Plaintiff's claims arise out of a prison riot on October 6, 2012, involving white and Hispanic inmates fighting against black inmates. (Complaint ¶ 1.) Plaintiff was in his housing unit when the riot began in the recreation yard. (*Id.*) Defendants Nunez, Lopez, Patterson, Porras, and Rivera were assigned to his housing unit that day, but Porras and Rivera left 15 minutes before their shift ended, at 1:45 p.m. (*Id.* at ¶¶ 2, 3.) Defendant Alvarez reported that the riot started at 1:52 p.m. (*Id.* at ¶ 3.) Nunez and Lopez ordered the inmates in the housing unit dayroom to lie down and then ordered Patterson, the control officer, to open the two security doors to the recreation yard. (*Id.* at ¶ 5.) When Patterson did so, Nunez and Lopez left the dayroom, and

about 60 black inmates rushed in from the yard. (*Id.* at ¶¶ 6, 7.) Together with the black inmates already in the dayroom, these inmates attacked plaintiff with office equipment such as computers, phones, chairs, irons, brooms, and mop handles. They were able to obtain this equipment from the unit office, because Lopez and Nunez had failed to secure it before leaving. (*Id.* at ¶¶ 7, 8.)

Plaintiff sustained life-threatening injuries and was airlifted to the Desert Regional Medical Center, where he was in a coma for ten days. (Complaint ¶ 9.) He was discharged from the hospital on October 18, 2012, and sent to the Ironwood central infirmary. (*Id.* at ¶ 11.) Between October 18, 2012, and November 19, 2012, he was "routinely seen" by doctors and nurses, but they never explained to him the full extent of his injuries and the surgeries that had been performed on him. (*Id.* at ¶ 12.) Plaintiff was given an incident report regarding the events of October 6, 2012, but had trouble reading it because, as a result of his injuries, he could not see well. (*Id.* at ¶ 11.)

On October 19, 2012, plaintiff complained to a nurse that he had a dislodged ankle pin, and she promised to inform a physician. (Complaint ¶ 14.) On October 22, 2012, defendant Young interviewed plaintiff regarding his vision. Plaintiff advised that he had severe pain around his left ankle area. (*Id.* at ¶ 15.) Young examined plaintiff's ankle and noticed that there was "some sort of protrusion," but Young said that it was "not important right now." (*Id.* at ¶ 16.)

On October 23, 2012, plaintiff was taken to Palo Verde Hospital and a CT scan of his head was performed. The physician reviewing the results, Dr. Sincavage, concluded that plaintiff was blind in the left eye and had decreased vision in the right eye. He sent a report to Dr. Lee regarding the importance of locating the ophthalmologist at the Desert Regional Medical Center, Dr. Schultz, for his report, which was not in plaintiff's medical records, and for his recommendation for follow up care. (Complaint ¶ 17.) Dr. Lee did not refer plaintiff to Dr. Schultz for further ophthalmological review, nor did he send him back to the Desert Regional Medical

Center. Plaintiff's vision worsened. (*Id.*)

On October 31, 2012, plaintiff's left ankle was x-rayed, and the x-ray revealed a fractured screw. (Complaint ¶ 19.) On November 19, 2012, Dr. Tolentino discharged plaintiff from the infirmary. (*Id.* at ¶ 20.) When plaintiff questioned Tolentino about being discharged while he still had a fractured ankle screw, Tolentino said the infirmary needed space for inmates with more severe conditions. (*Id.*) Plaintiff was placed in a single cell in administrative segregation. (*Id.*)

In the meantime, plaintiff had a disciplinary hearing and was exonerated of any infraction in connection with the riot. (Complaint ¶¶ 19, 21.) On November 30, 2012, plaintiff was assigned a cellmate. Plaintiff's cellmate told plaintiff about what had happened during the riot and encouraged him to file a grievance. (*Id.* at ¶¶ 22-23.)

Plaintiff asserts three claims for relief: (1) an Eighth Amendment claim against defendants Long, Cheney, Smith, Wooldridge, Alvarez, Wright, Nunez, Rivera, Porras, and Lopez for deliberate indifference to his safety; (2) an Eighth Amendment claim against defendants Lee, Tolentino, and Young for deliberate indifference to his serious medical needs; and (3) a state law claim against all defendants except Patterson. (Complaint at 5, 5g, 5h.) He seeks damages. (*Id.* at 6.)

## DISCUSSION

### I. PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION.

Rule 10(a) of the Federal Rules of Civil Procedure requires that the name of each defendant be included in the caption of the complaint. Fed. R. Civ. P. 10(a); *see also* Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992); Local Rule 11-3.8(d). Currently, the caption of the Complaint only names defendant Long. If plaintiff files a First Amended Complaint, he must include in the caption the names of all defendants whom he has not dropped from this action.

## II. PLAINTIFF CANNOT ASSERT A CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Plaintiff has sued all defendants in their official as well as individual capacities. (Complaint at 1-4.) Official capacity claims against state officials are merely another way of pleading a claim against the state itself. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")(internal citation omitted). The Eleventh Amendment prohibits federal jurisdiction over claims against a state unless the state has consented to suit or Congress has abrogated its immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104 S. Ct. 900, 907-08 (1984). The State of California has not consented to be sued under Section 1983 in federal court, and the Supreme Court has held that Section 1983 was not intended to abrogate a state's Eleventh Amendment immunity. Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see* Kentucky v. Graham, 473 U.S. 159, 169 n.17, 105 S. Ct. 3099, 3107 n.17 (1985). In addition, the Supreme Court has held that a state official sued in his or her official capacity is not "a person" for purposes of Section 1983. Will, 491 U.S. at 71 & n. 10, 109 S. Ct. at 2312 & n.10.

Defendants are officials of the California Department of Corrections and Rehabilitation, which is an arm of the State of California and is entitled to Eleventh Amendment immunity. Plaintiff's official capacity claims for damages under Section 1983, therefore, are barred by the Eleventh Amendment.[1] Plaintiff may only sue defendants under Section 1983 in their individual capacities.

---

[1] The Eleventh Amendment does not bar official capacity claims against state officials for prospective injunctive relief to end a continuing violation of federal law. Ex parte Young, 209 U.S. 123, 155-57, 28 S. Ct. 441, 452-53 (1908); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). Plaintiff, however, is not seeking injunctive relief from defendants. Indeed, he cannot do so, since he is no longer at Ironwood.

## III. PETITIONER FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO HIS SAFETY AGAINST DEFENDANTS LONG, CHENEY, SMITH, WOOLDRIDGE, ALVAREZ, WRIGHT, RIVERA, AND PORRAS.

In Claim One, Petitioner asserts an Eighth Amendment claim for deliberate indifference to his safety against defendants Long, Cheney, Smith, Wooldridge, Alvarez, Wright, Nunez, Rivera, Porras, and Lopez.[2] (Complaint at 5.)

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse by other inmates. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 1976 (1994); Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, plaintiff must show that the officials were deliberately indifferent to a substantial risk of serious harm to his safety. Farmer, 511 U.S. at 828, 114 S. Ct. at 1974. Deliberate indifference exists when the official knows of and disregards an excessive risk to the inmate's safety. *Id.* at 837, 114 S. Ct. at 1979. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must actually draw the inference. *Id.* While "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," the inference drawn from the obviousness of a risk is not conclusive, and it remains open to an official to prove that the obvious escaped him. *Id.* at 842-43 & n.8, 114 S. Ct. 1981-82 & n.8.

Here, plaintiff contends that defendants failed to protect him from the assault he suffered during the inmate riot on October 6, 2012. The Court finds that plaintiff's allegations are sufficient

---

[2] Although plaintiff alleges in the body of the Complaint that defendant Patterson showed deliberate indifference to his safety by opening the security doors, plaintiff does not include Patterson's name among the defendants against whom he asserts Claim One. (Complaint at 5.) The Court, therefore, will not address whether plaintiff's allegations are sufficient to state an Eighth Amendment claim against Patterson. If plaintiff intended to assert his claim against Patterson, he can rectify the omission in the First Amended Complaint.

to allege an Eighth Amendment claim against defendants Nunez and Lopez at the screening stage. Plaintiff alleges that, after the riot erupted in the recreation yard, Nunez and Lopez ordered the inmates in the dayroom to lie in a prone position and "ordered" Patterson to open the security gates to the recreation yard. Once the gates were open, Nunez and Lopez left the dayroom without "securing" the inmates or the unit office. As a result, 60 or so rioting inmates were able to enter the dayroom through the doors used by Nunez and Lopez, inmates already in the dayroom were able to join the entering inmates in assaulting inmates like plaintiff, and the rioting inmates were able to use the furnishings of the unit office as weapons. Liberally construed, these factual allegations support an inference that the risk to inmates such as plaintiff was so obvious that Lopez and Nunez must have been aware of it. *See* Farmer, 511 U.S. at 842, 114 S. Ct. 1982.

Plaintiff's allegations, however, are not sufficient to allege an Eighth Amendment claim against the other eight defendants. With respect to defendants Porras and Rivera, plaintiff alleges that they left work 15 minutes before the end of their scheduled shift and, as a result, were not at plaintiff's housing unit when the riot started. (Complaint ¶¶ 2-3.) Porras and Rivera did not leave the inmates in plaintiff's unit without supervision; correctional officers Patterson, Nunez, and Lopez remained on the scene. Plaintiff does not allege that Porras and Rivera had any reason to know that a riot would erupt shortly after they left. There are no facts in the Complaint from which the Court could conclude that, by leaving early, Porras and Rivera showed deliberate indifference to plaintiff's safety.

As for defendants Long, Cheney, Smith, Wooldridge, Alvarez, and Wright, plaintiff does not allege that they had anything to do with the entrance of rioting inmates into plaintiff's dayroom through the door opened by Lopez, Nunez, and Patterson. Plaintiff cannot hold these defendants liable for his injuries based on their supervisory positions alone. "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (quoting Hansen v. Black, 885 F.2d 642, 645–46 (9th Cir. 1989)); *see also* Iqbal, 556 U.S. at 676, 129 S. Ct. at 1948 (because vicarious liability is

inapplicable to Section 1983 suits, plaintiff must allege that each defendant has violated the Constitution through his own individual actions). A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Snow, 681 F.3d at 989 (quoting Hansen, 885 F.2d at 645). Plaintiff has not alleged any wrongful conduct on the part of defendants Long, Cheney, Smith, Wooldridge, Alvarez, and Wright, nor has he alleged any causal connection between the assault on him and anything these defendants did or omitted to do.

Accordingly, Claim One withstands screening as to defendants Nunez and Lopez, but fails to state an Eighth Amendment claim against defendants Long, Cheney, Smith, Wooldridge, Alvarez, Wright, Porras, and Rivera.

## IV. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS.

In Claim Two, plaintiff asserts an Eighth Amendment claim for deliberate indifference to his serious medical needs against the three medical defendants -- Lee, Tolentino, and Young. (Complaint at 5g.)

### A. Applicable Law

The state must provide medical care to prisoners, because their incarceration has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Failure to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs. Estelle, 429 U.S. at 104, 97 S. Ct. at 291. A determination of "deliberate indifference" involves an

examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(*en banc*). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin 974 F.2d at 1059.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." *Id.* at 1059; *see* Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106, 97 S. Ct. at 292.

As a general matter, a difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference. *See* Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). An inmate asserting a deliberate indifference claim against medical personnel must show that they chose, in conscious disregard of an excessive risk to the inmate's health, a course of treatment medically unacceptable under the circumstances. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

**B. Analysis**

Plaintiff received prompt medical attention for the severe injuries he suffered as a result

of the assault on him during the October 6, 2012 riot. (Complaint ¶¶ 9-11.) His claim that defendants Young, Lee, and Tolentino were deliberately indifferent to his serious medical needs rests on the following allegations: (1) when plaintiff complained about ankle pain during a medical visit regarding his vision, Young examined his ankle and found a protrusion, but said, "That's not important right now" (Complaint ¶ 15); (2) Lee did not refer plaintiff for further ophthalmological review to the Desert Regional Medical Center, as the physician interpreting the results of plaintiff's CT scan had recommended, resulting in the worsening of plaintiff's vision (*Id.* at ¶ 17); and (3) Tolentino discharged plaintiff from the infirmary, even though plaintiff had been diagnosed with a fractured ankle screw (*Id.* at ¶ 20.)

There are no factual allegations from which the Court could conclude that Young purposefully ignored plaintiff's serious medical needs. *See* McGuckin, 974 F.2d at 1060. Young examined plaintiff's ankle on October 22, 2012, and his ankle was x-rayed on October 31, 2012, a mere week later.[3] (Complaint ¶¶ 15, 18.) Moreover, Young's comment only indicates that she considered plaintiff's ankle of less immediate concern than his head injuries. In fact, the very next day plaintiff was sent to a hospital to receive a CT scan of his head. (*Id.* at ¶ 17.) Plaintiff, therefore, has not alleged deliberate indifference on the part of defendant Young.

Plaintiff's claim against defendant Lee rests on Lee's failure to refer plaintiff to the ophthalmologist at the Desert Regional Medical Center for further review, as recommended in the report regarding the results of his CT scan. (Complaint ¶ 17.) However, plaintiff does not allege that he did not receive *any* further medical care for his deteriorating vision; he only complains that he was never referred back to the Desert Regional Medical Center. It appears from the third level response to plaintiff's grievance regarding this issue that plaintiff received further ophthalmological

---

[3] According to the third level response to plaintiff's grievance regarding this issue, plaintiff was referred to an orthopedic surgeon "for possible hardware removal" on January 15, 2013, and was seen by an orthopedic surgeon on January 22, 2013. On March 28, 2013, a titanium pin was surgically removed from his ankle. (Complaint, Ex. C.)

evaluations and care. (Complaint, Ex. D.) Plaintiff has not alleged that Dr. Lee's failure to refer him back to the Desert Regional Medical Center was medically unacceptable, or that Lee acted with a conscious disregard of an excessive risk to plaintiff's health. *See* Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

Plaintiff's claim against defendant Tolentino rests on Tolentino's decision to discharge plaintiff from the infirmary, even though he still had a fractured ankle screw. (Complaint ¶ 20.) Plaintiff does not allege that his continued stay in the infirmary was medically necessary for his condition, or that his removal to administrative segregation worsened his condition or caused him significant additional pain. The Complaint contains no factual allegations from which the Court could infer that Dr. Tolentino's decision to discharge plaintiff was medically unacceptable under the circumstances, and that Tolentino did so in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

Accordingly, plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his serious medical needs against any of the three medical defendants.

## CONCLUSION

For the foregoing reasons, the Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted 30 days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the Complaint described herein. The First Amended Complaint, if any, shall be complete in itself.[4] It shall not refer in any manner to the original Complaint.

---

4 Thus, although plaintiff's Eighth Amendment claims against defendants Nunez and Lopez withstood screening, he *must* reallege these claims, along with his supporting allegations, in the First Amended Complaint in order to continue pursuing them. Similarly, even though the Court has not identified any deficiencies in Claim Three in this screening order, plaintiff must reallege it, if he wants to pursue it.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: November 5, 2013

Margaret A. Nagle

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE