O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES G. GARCIA, | NO. EDCV 13-1610-JFW (MAN) |
| Plaintiff, | MEMORANDUM AND ORDER DISMISSING |
| v. | FIRST AMENDED COMPLAINT WITH |
| DAVID B. LONG, Warden, et al, | LEAVE TO AMEND |
| Defendants. | |

On October 29, 2013, plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").  On November 5, 2013, the Court dismissed the Complaint, with leave to amend, pursuant to the screening provisions of the Prison Litigation Act of 1995.  On January 24, 2014, plaintiff filed a First Amended Complaint.

Congress has mandated that courts perform an initial screening of civil rights actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity.  The Court "shall" dismiss a prisoner civil rights action if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit.  28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

In screening a *pro se* civil rights complaint, the Court must construe its allegations liberally and must afford the plaintiff the benefit of any doubt. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). The standard applicable on screening is the standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. The complaint need not contain detailed factual allegations but must contain sufficient factual matter to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). If a complaint is dismissed, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007); Karim-Panahi, 839 F.2d 621, 623 (9th Cir. 1988).

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiff's claims arose during his incarceration at Ironwood State Prison ("Ironwood"). (First Amended Complaint at 2.) Plaintiff was subsequently transferred to another California prison, the California's Men's Colony ("CMC"), and later to the California Medical Facility ("CMF"), where he is currently incarcerated.

Plaintiff has sued the following Ironwood officials: David Long, warden; W.L. Montgomery, chief deputy warden; K. Chambers, appeals coordinator; S.M. Smith, captain; T.D. Wooldridge, lieutenant; M. Smith, sergeant; S. Patterson, correctional officer; E. Nunez, correctional officer; S. Lopez, correctional officer; J.M. Lee, chief medical executive; and A. Tolentino, physician. Plaintiff has also sued Matthew Cate, the former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and the following CMC officials: E. Valenzuela, warden; P. Raught, appeals coordinator; and G.B. Chaffe, optometrist. Plaintiff has sued Cate in his individual and official capacities, and all other defendants solely in their individual capacities. (First Amended Complaint at 1-4.)

2

Plaintiff contends that Cate implemented a security plan of operations for Ironwood, which was put into practice by Ironwood officials. (First Amended Complaint ¶¶ 2-3.) A handbook manual containing instructions to follow in the event of an alarm was issued to all Ironwood officials. (*Id.* at ¶ 2.) The manual instructs all prison officials "with boots on the ground" to respond to an alarm. According to plaintiff, this means that all officials "with boots on the ground" are required to leave their assigned posts and respond to an alarm, even if inmates are left unsupervised. (*Id.* at ¶¶ 5-6.) Warden Long "submitted and adopted" the policy and trained Ironwood officials to comply with it. (*Id.* at ¶¶ 9-11.) Captain S.M. Smith trained all prison officials assigned to D-Yard to comply with the policy and maintained a log of persons who participated in the training. (*Id.* at ¶¶ 14-15). During a meeting with S.M. Smith in plaintiff's capacity as a member of the Men's Advisory Council, he asked her about the policy, and specifically asked her whether inmates would be left unsupervised when prison officials left their posts to respond to an alarm. *(Id.* at ¶¶ 16-19.) Smith told plaintiff that she did not agree with the protocol, but that until the security committee developed a more comprehensive plan, she would enforce the policy even if it meant leaving inmates unsupervised. (*Id.* at ¶ 19.)

On October 6, 2012, a riot ocurred at Ironwood, which involved fighting between African-American and Hispanic inmates. (First Amended Complaint ¶ 33.) Plaintiff alleges that, prior to the riot, defendants Wooldridge and M. Smith observed inmates grouping themselves by race in the recreation yard but did not follow standard protocol by sounding the security alarm to have the inmates return to their housing units so that the unrest could be investigated before it escalated into violence. (*Id.* at ¶¶ 24-25, 28-29.)

Defendants Patterson, Nunez, and Lopez were working in the D-yard when the riot erupted. (First Amended Complaint ¶ 33.) They later reported that several African-American and Hispanic inmates fought in the dayroom. (*Id*. at ¶ 34.) Lopez and Nunez sounded their security alarm and ordered all the inmates in the dayroom to assume a prone position. The inmates complied. Plaintiff contends that Lopez and Nunez were "required per protocol" to separate the inmates by

3

1  race to prevent further violence.  Instead, they left the inmates unsecured and ordered Patterson,
2  the control booth officer, to open both security doors to the recreation yard, where the riot was
3  taking place.  Patterson opened the doors and Nunez and Lopez left the dayroom.  (*Id.*)  Plaintiff
4  contends that Lopez and Nunez left their assigned posts, leaving the inmates in the dayroom
5  unsupervised, because of the prison policy promulgated and implemented by the supervisory
6  defendants.  (*Id.* at ¶¶ 7, 12, 20.)

8  After Lopez and Nunez left, about 60 African-American inmates entered the dayroom from
9  the recreation yard through the doors opened to allow Lopez and Nunez to leave.  (First Amended
10 Complaint ¶¶ 34-35.)  Together with African-American inmates already in the dayroom, these
11 inmates attacked plaintiff with office equipment such as computers, phones, chairs, irons, brooms,
12 and mop handles.  They were able to obtain this equipment from the unit office, because Lopez
13 and Nunez failed to secure it before leaving.  (*Id.* at ¶¶ 35-36.)  As a result of the attack, plaintiff
14 sustained severe injuries, including blindness in the left eye, partial blindness in the right eye,
15 several stab wounds, and multiple facial fractures.  (*Id.* at ¶¶ 8, 12, 20, 37.)

17 Plaintiff's administrative appeals regarding the incident were rejected by defendants
18 Chambers and Montgomery for procedural reasons.  (First Amended Complaint ¶¶ 39-43.)

20 On November 19, 2012, defendant Tolentino, an Ironwood physician, was notified that
21 plaintiff was in severe pain as a result of a broken ankle pin, and required a walker.  (First
22 Amended Complaint ¶ 46.)  Tolentino nevertheless "deliberately confiscated plaintiff's walker" and
23 discharged him from the infirmary with no treatment for his ankle.  (*Id.* at ¶¶ 46-47.)  Plaintiff
24 suffered severe pain as a consequence of being forced to walk without a walker for approximately
25 five months.  (*Id.* at ¶ 47.)

27 Plaintiff further alleges that, on October 18, 2012, defendant Lee, the chief medical
28 executive of Ironwood, was notified by the Desert Regional Medical Center, where plaintiff had

been treated for the injuries sustained on October 6, 2012, that he needed a follow-up visit with an ophthalmologist within two weeks. Lee denied authorization for the visit. (First Amended Complaint ¶ 50.) On April 3, 2013, "a second ophthalmologist" notified Lee that plaintiff needed a CT scan and a follow-up visit to determine whether plaintiff's surgical metal implants were the cause of his vision impairment. Lee denied authorization for the follow-up visit, "subjecting plaintiff to further blindness." (*Id.* at ¶¶ 51-52.)

On August 7, 2013,[1] after his transfer to CMC, plaintiff notified CMC optometrist Chaffe that, before his transfer to CMC, he was scheduled for an appointment with an ophthalmologist. Chaffe denied authorization for the appointment. (First Amended Complaint ¶¶ 55, 56.) Plaintiff filed inmate appeals for medical care, which were denied by CMC appeals coordinator Raught and Warden Valenzuela. (*Id.* at ¶¶ 57-58.)

Plaintiff asserts the following claims for relief: (1) Eighth Amendment claims against defendants Cate, Long, S.M. Smith, Wooldridge, M. Smith, Patterson, Nunez, and Lopez for deliberate indifference to his safety (Claims One and Two); (2) Eighth Amendment claims against defendants Lee, Tolentino, and Chaffe for deliberate indifference to his serious medical needs (Claims Three and Four); (3) procedural due process claim against Valenzuela, Raught, Montgomery, and Chambers (Claims Five and Six); and (4) state law claims against all defendants (Claims Seven through Ten). He seeks damages and injunctive relief ordering the chief medical executive at CMC to arrange for a specialist to review the CT scan of plaintiff's maxi-facial and visual optic nerve and to provide the treatment recommended by the specialist. (First Amended Complaint at 5-6.)

---

[1] The First Amended Complaint gives the year as "2012," but it is plain from the context that it should be "2013."

**DISCUSSION**

I. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT CATE IN HIS OFFICIAL CAPACITY.**

Plaintiff has sued defendant Cate in both his official and individual capacities. (First Amended Complaint at 3.) Cate is no longer the CDCR Secretary, and plaintiff cannot assert an official capacity claim against him.

Moreover, as the Court informed plaintiff in its prior dismissal order, official capacity claims for damages under Section 1983 are barred by the Eleventh Amendment, and a state official sued in his or her official capacity for damages is not "a person" for purposes of Section 1983. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10, 109 S. Ct. 2304, 2312 & n.10 (1989); Kentucky v. Graham, 473 U.S. 159, 169 n.17, 105 S. Ct. 3099, 3107 n.17 (1985); Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999). The Eleventh Amendment does not bar official capacity claims against state officials for prospective injunctive relief to end a continuing violation of federal law. Ex parte Young, 209 U.S. 123, 155-57, 28 S. Ct. 441, 452-53 (1908); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). However, plaintiff does not seek injunctive relief from Cate; he only seeks such relief from the CMC medical director.[2] (First Amended Complaint at 6.) Indeed, the injunctive relief sought by plaintiff is not relief he could properly seek from Cate or his successor. *See* Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992) (Ex parte Young doctrine requires a "fairly direct" connection between the official and the violation to be enjoined). The Ex parte Young exception, therefore, is inapplicable to plaintiff's official capacity claim against Cate.

---

[2] The Court notes that the CMC medical director is not a defendant in this action. In any event, plaintiff cannot obtain injunctive relief with respect to his medical care from any CMC official because he is no longer incarcerated at CMC. *See* Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). Plaintiff's medical care at CMF, where he is currently incarcerated, is not at issue in this action.

6

Accordingly, plaintiff's official capacity claim against defendant Cate must be dismissed.

## II. PLAINTIFF FAILS TO ALLEGE EIGHTH AMENDMENT CLAIMS FOR DELIBERATE INDIFFERENCE TO HIS SAFETY AGAINST DEFENDANTS CATE, WOOLDRIDGE, M. SMITH, AND PATTERSON

In Claims One through Three, plaintiff asserts claims for deliberate indifference to his safety against defendants Cate, Long, S. M. Smith, Wooldridge, M. Smith, Patterson, Nunez, and Lopez. As explained below, the Court finds that plaintiff's claims against Long, S.M. Smith, Nunez, and Lopez withstand screening, but his claims against Cate, Wooldridge, M. Smith, and Patterson do not.

### A. Applicable Legal Principles

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse by other inmates. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 1976 (1994). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S. Ct. at 1977. A prison official is liable for an assault by one inmate on another only when the assaulted inmate can show that that the official was deliberately indifferent to a substantial risk of serious harm to his safety. *Id.* at 828, 114 S. Ct. at 1974. Deliberate indifference exists when the official knows of and disregards an excessive risk to the inmate's safety. *Id.* at 837, 114 S. Ct. at 1979. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must actually draw the inference. *Id.* While "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," the inference drawn from the obviousness of a risk is not conclusive, and it remains open to an official to prove that the obvious escaped him. *Id.* at 842-43 & n. 8, 114 S. Ct. 1981-82 & n. 8.

7

## B. Defendants Wooldridge and M. Smith

Plaintiff seeks to hold defendants Wooldridge and M. Smith liable for his injuries on the theory that they observed the incipient riot and failed to take prompt action to prevent it from escalating. He alleges that: (1) Wooldridge and M. Smith were trained to detect tensions among inmates; (2) on October 6, 2012, they observed inmates assembling by race in the D-yard recreation yard; (3) they were trained to sound the alarm in such a situation, so that all inmates would return to their housing units for lockdown pending investigation of the unrest; and (4) they did not sound the alarm. (First Amended Complaint ¶¶ 24-25, 28-29.)

These allegations do not support a plausible inference that Wooldridge and M. Smith knew that a riot was about to occur and deliberately allowed it to take place. At most, plaintiff has alleged negligence on their part, *i.e.*, they should have realized the significance of their observations and sounded an alarm, but did not. Mere negligence does not constitute deliberate indifference. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978; *see* Whitely v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety").

Accordingly, plaintiff's claims against defendants Wooldridge and M. Smith must be dismissed.

## C. Defendants Cate, Long, and S. M. Smith

Plaintiff contends that former CDCR Secretary Cate, Warden Long, and Captain S.M. Smith are liable for his injuries, because they promulgated and implemented a policy requiring all "boots on the ground" to leave their assigned posts to respond to an alarm, leaving inmates unsupervised. He contends that defendants Lopez and Nunez followed this policy when they left the dayroom, leading to plaintiff's injuries at the hands of rioting inmates. (First Amended Complaint ¶¶ 7, 12,

8

1  20.)

3    Supervisory officials may be individually liable for a constitutional violation if they implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). When a plaintiff seeks to hold a supervisory official individually liable for damages based on a policy implemented by the official, it essential to show that the policy caused the constitutional violation. See OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012), cert. denied, 134 S. Ct. 70 (2013) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm -- that is so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.").

    Here, plaintiff alleges that the purported policy required all prison officials to respond to an alarm, leaving the inmates at their assigned duty stations unsupervised. For screening purposes, the Court must accept plaintiff's factual allegations as true. Assuming that, as plaintiff alleges, the purported policy required prison officials to leave the inmates in their charge unsupervised, despite circumstances putting them on notice of an excessive risk to inmate safety, the Court finds that, at the screening level, plaintiff has adequately alleged a policy sufficiently deficient to support an Eighth Amendment claim against the officials who promulgated and implemented it. See Hansen, 885 F.2d at 646.

    Plaintiff, however, must allege a sufficient connection between the purported policy and defendants Cate, Long, and S.M. Smith. At the screening level, plaintiff's allegations are sufficient to assert an Eighth Amendment claim against Warden Long and Captain S. M. Smith, but not against former CDCR Secretary Cate. Plaintiff alleges that Cate implemented the security plan of operations for Ironwood, which was contained in a handbook manual issued to all Ironwood prison officials. (First Amended Complaint ¶ 2.) In view of Cate's former role and responsibilities, the

Court does not find these allegations sufficient to state a plausible claim against him.  *See* Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (inquiry into causation must be individualized and focus on duties and responsibilities of the defendant); *see also* Hutchins v. Nevada Dept. of Corrections, 2013 WL 281279, *16 (D. Nev., Jan. 23, 2014) (summary judgment for defendants denied when there was no evidence that defendants created or implemented the policy at issue, and the policy did not necessarily cause the injury).  To assert a claim against Cate, plaintiff must include specific factual allegations showing Cate's connection with promulgating and/or implementing the alleged policy at Ironwood.

Accordingly, plaintiff's individual capacity claim against defendant Cate must be dismissed.

### D.   Defendants Patterson, Nunez, and Lopez

The Court finds that plaintiff's allegations are sufficient to allege an Eighth Amendment claim against defendants Nunez and Lopez at the screening stage.  Plaintiff, however, has not alleged a factual basis for liability against defendant Patterson.  Plaintiff alleges that: Patterson was the control booth officer; Lopez and Nunez ordered him to open the security doors to the recreation yard where the riot was taking place, so that they could go there; Patterson opened the doors; Lopez and Nunez left; and approximately 60 rioting inmates entered the dayroom through the open doors.  (First Amended Complaint ¶¶ 34-35.)

These allegations are insufficient to allege that Patterson was deliberately indifferent to the safety of inmates such as plaintiff.  Patterson merely opened the doors to enable Lopez and Nunez to exit the dayroom to respond to an alarm.  Plaintiff does not allege that Patterson deliberately failed to close the doors after Lopez and Nunez exited, nor does he allege any other facts giving rise to a plausible inference that Patterson deliberately disregarded the risk that the inmates rioting in the recreation yard would enter the dayroom and injure inmates there.  It may be true that if Patterson had not opened the doors, the rioting inmates would not have been able to enter, but

causation-in-fact is insufficient for Section 1983 liability. *See* Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). Moreover, even if Lopez and Nunez were deliberately indifferent for leaving the dayroom without taking further action to ensure the safety of the inmates there, Patterson cannot be liable based on opening the door to enable them to leave. There is no indication that Patterson was their superior; in fact, plaintiff alleges that Lopez and Nunez ordered Patterson to open the door. (First Amended Complaint ¶ 34.)

Accordingly, plaintiff's claim against defendant Patterson must be dismissed.

### III. PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM BASED ON THE PROCESSING OF HIS GRIEVANCES.

In Claims Five and Six, plaintiff asserts procedural due process claims against defendants Montgomery, Chambers, Valenzuela, and Raught based on the processing of his grievances. Plaintiff alleges that Ironwood officials Montgomery and Chambers improperly rejected his grievances for processing, and that CMC officials Valenzuela and Raught improperly rejected his grievances for processing or denied them. (First Amended Complaint ¶¶ 39-43, 57-62.)

A prisoner cannot state a due process claim based on the handling of his grievances. *See* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *see also* Larkin v. Watts, 300 Fed. Appx. 501, 2008 WL 4946284, at *1 (9th Cir. Nov. 12, 2008) ("Larkin's claim that the defendants improperly processed his administrative complaints or grievances does not give rise to a cognizable constitutional . . . claim.").

Accordingly, plaintiff's due process claims against defendants Montgomery, Chambers, Valenzuela, and Raught must be dismissed.

## IV. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS AGAINST DEFENDANTS LEE AND CHAFFE.

In Claims Three and Four, plaintiff asserts claims for deliberate indifference to his serious medical needs against Ironwood physicians Lee and Tolentino and CMC optometrist Chaffe. (First Amended Complaint ¶¶ 46-47, 51-52, 55-56.) As explained below, the Court finds that plaintiff's claim against Tolentino withstands screening, but his claims against Lee and Chaffe do not.

### A. Applicable Law

The state must provide medical care to prisoners, because their incarceration has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Failure to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs. Estelle, 429 U.S. at 104, 97 S. Ct. at 291. A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need; and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin 974 F.2d at 1059.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." *Id.* at 1059; *see* Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291. However, an inadvertent or negligent failure to provide medical

care does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106, 97 S. Ct. at 292.

As a general matter, a difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference. *See* Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). An inmate asserting a deliberate indifference claim against medical personnel must show that they chose, in conscious disregard of an excessive risk to the inmate's health, a course of treatment medically unacceptable under the circumstances. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

### B.   Defendant Tolentino

Plaintiff contends that Dr. Tolentino was deliberately indifferent to his serious medical needs when he discharged him from the prison infirmary on November 19, 2012, without issuing him a walker. Plaintiff alleges that Tolentino knew that plaintiff had a broken ankle pin and that walking caused him severe pain, but nevertheless "deliberately confiscated plaintiff's walker" and discharged him without any ankle treatment or therapy. As a result, plaintiff was obliged to walk without a walker for approximately five months, and he suffered severe pain. (First Amended Complaint ¶¶ 45-47.)

While Tolentino may have had medical reasons for concluding that plaintiff did not require a walker or further medical treatment for his ankle, his reasons are not apparent on the face of the First Amended Complaint. At the screening level, plaintiff's allegations are sufficient to assert a claim against defendant Tolentino for deliberate indifference to plaintiff's serious medical needs.

Case 5:13-cv-01610-JFW-DFM   Document 15   Filed 03/11/14   Page 14 of 16   Page ID #:185

### C. **Defendant Lee**

Plaintiff bases his Eighth Amendment claim against defendant Lee, the chief medical executive at Ironwood, on the following allegations: (1) on October 18, 2012, Lee was notified by the Desert Regional Medical Center that plaintiff required a follow-up appointment with the Desert Regional Medical Center ophthalmologist within two weeks, and he denied authorization for the appointment; and (2) on April 3, 2013, Lee was notified by ophthalmologist Dr. Santiago that plaintiff required a CT scan and a follow-up appointment to determine whether his metal implants were the cause of his deteriorating vision, and Lee nevertheless denied authorization for the follow-up appointment. Plaintiff contends that his vision deteriorated as a result. (First Amended Complaint ¶¶ 50-52.)

These allegations are insufficient to allege deliberate indifference by Dr. Lee. Plaintiff's reference to ophthalmologist Dr. Santiago shows that plaintiff *was* seen by an ophthalmologist at some point between October 18, 2012, and April 3, 2013. Delays in providing medical care do not constitute deliberate indifference unless the delay causes further harm. Shapley v. Nevada Board of Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); *see also* Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (prisoners alleging deliberate indifference claims based on the delay of medical treatment must show that the delay caused significant harm and that defendant should have known it would). To the extent that plaintiff complains he was denied a CT scan, the Court notes that, according to the third-level denial of his administrative appeal attached to the First Amended Complaint, plaintiff received a CT scan on May 17, 2013, the results of which were discussed with his primary care provider, and he received an optometry evaluation on June 6, 2013. (First Amended Complaint, Ex. D.) Moreover, plaintiff alleges that he was scheduled for another ophthalmological appointment when he was transferred to CMC on June 25, 2013. (First Amended Complaint ¶ 55, Ex. D.) Plaintiff's factual allegations, therefore, do not support a plausible claim against Lee for deliberate indifference to plaintiff's serious medical needs with respect to his vision.

Accordingly, plaintiff's claim against defendant Lee must be dismissed.

### D.     Defendant Chaffe

Plaintiff contends that, on August 7, 2013, CMC optometrist Chaffe denied him authorization for an ophthalmological appointment, which had been scheduled by his primary physician at Ironwood before his transfer to CMC. (First Amended Complaint ¶¶ 55-56.) The Court notes that, according to the response to plaintiff's third level administrative appeal, he received two optometry evaluations within a month of his arrival at CMC. (First Amended Complaint, Ex. D.) Thus, plaintiff *was* receiving medical care for his vision at CMC. Plaintiff has not alleged facts showing that his lack of access to an ophthalmologist posed an excessive risk to his vision, and that Chaffe consciously disregarded this risk when he denied authorization for the appointment. *See* Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

Accordingly, plaintiff's claim against defendant Chaffe must be dismissed.

### CONCLUSION

For the foregoing reasons, the First Amended Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted 30 days from the date of this Memorandum and Order within which to file a Second Amended Complaint that attempts to cure the defects in the First Amended Complaint described herein. The Second Amended Complaint, if any, shall be complete in itself.[3] It shall not refer in any manner to the original Complaint or the First Amended Complaint. **Plaintiff may not include new claims or new defendants without obtaining**

---

[3] Thus, although plaintiff's Eighth Amendment claims against defendants Long, S. M. Smith, Nunez, Lopez, and Tolentino withstood screening, plaintiff *must* reallege these claims, along with his supporting allegations, in the Second Amended Complaint in order to continue pursuing them.

**prior leave of court. Fed. R. Civ. P. 15(a).**

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: March 11, 2014

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE